HARTZ, Circuit Judge.
Gerald Barkell was convicted by a jury in Wyoming state court on two counts of third-degree sexual assault. After initiating an appeal of his conviction, he sought a remand to the trial court for an evidentia-ry hearing regarding a claim of ineffective *687 assistance of counsel. The Wyoming Supreme Court denied the request. Continuing his appeal without the benefit of an evidentiary hearing, Mr. Barkell contended that his trial counsel had been constitutionally ineffective in the preparation for and conduct of the trial, and that the Wyoming Supreme Court had denied him due process and a meaningful appeal by denying his motion for remand. On October 16, 2002, the court affirmed. Barkell v. State, 55 P.3d 1239, 1246 (Wyo.2002).
On January 14, 2004, Mr. Barkell submitted an application for habeas relief under 28 U.S.C. § 2254 in the United States District Court for the District of Wyoming, raising the same issues raised before the Wyoming Supreme Court. The district court denied relief but granted a certificate of appealability (COA). See 28 U.S.C. § 2253(c)(1) (requiring COA). Mr. Barkell now appeals to this court. We have jurisdiction under 28 U.S.C. §§ 1291 and 2253. We affirm with respect to the claims of denial of due process by the Wyoming Supreme Court and ineffective assistance of counsel during trial. But we reverse and remand for further . proceedings on Mr. Barkell’s claim that his attorney was ineffective in preparing for trial. Because (1) he presented allegations to the federal district court that, if true, would entitle him to relief; (2) he cannot be faulted for failure to develop the supporting evidence in state court; and (3) the state court has not ruled on whether he would be entitled to relief if he were able to prove his allegations, we do not defer to the state court’s ruling on his ineffective-preparation claim and we grant him the opportunity to pursue that claim in federal district court.
I. BACKGROUND
Mr. Barkell was charged with sexual assault after his 10-year-old stepdaughter, BV, accused him of forcing her to engage in sexual acts on successive nights in early July 1999. Diane Lozano, an attorney with the Wyoming Public Defender’s Office, was appointed to represent him. On October 26, 1999, Chris McQueen, a contract public defender, replaced Ms. Lozano and represented Mr. Barkell at trial on January 24 and 25, 2000. The jury returned guilty verdicts on two counts of third-degree sexual assault, in violation of Wyo. Stat. Ann. § 6-2-304(a)(ii). Mr. Barkell was sentenced to consecutive terms of five-to-seven years’ imprisonment on each count.
Mr. Barkell, again represented by the Wyoming Public Defender’s Office, filed a timely appeal to the Wyoming Supreme Court on June 5, 2000. On February 23, 2001, he moved the court to remand the case to the trial court for “an evidentiary hearing to establish the factual basis for a claim of ineffective assistance of trial counsel based on the deficient performance by the trial counsel.” ApltApp. Vol. I at 86. On March 1 the court denied the motion without comment. It later affirmed Mr. Barkell’s convictions.
Mr. Barkell’s application under § 2254 claims (1) violation of his right under the Sixth and Fourteenth Amendments to effective assistance of counsel, and (2) violations of the rights to due process and a meaningful appeal by virtue of the Wyoming Supreme Court’s denial of his motion for a limited remand. On April 20, 2005, the district court denied the application, stating that the Wyoming Supreme Court’s adjudication of his claims was neither contrary to, nor an unreasonable application of, clearly established federal law.
II. DISCUSSION
A. Denial of Remand
On appeal Mr. Barkell contends that the state court’s refusal to grant a limited remand to develop the record for his inef *688 fectiveness claim violated his rights to due process and a meaningful appeal. The Wyoming Supreme Court rejected this contention, holding that Mr. Barkell could not “rely on mere allegations and speculation” to justify a remand. Barkell, 55 P.3d at 1246.
1. Standard of Review
The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) provides that when a claim has been adjudicated on the merits in state court, a federal court will grant habeas relief only when the applicant establishes that the state court decision was “contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,” or “was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.” 28 U.S.C. § 2254(d)(1), (2).
Under the “contrary to” clause, we grant relief only if the state court arrives at a conclusion opposite to that reached by the .Supreme Court on a question of law or if the state court decides a case differently than the [Supreme] Court has on a set of materially indistinguishable facts. Under the “unreasonable application” clause, relief is provided only if the state court identifies the correct governing legal principle from the Supreme Court’s decisions but unreasonably applies that principle to the facts of the prisoner’s case. Thus we may not issue a habeas writ simply because we conclude in our independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.
Gipson v. Jordan, 376 F.3d 1193, 1196 (10th Cir.2004) (internal quotation marks and citations omitted).
2. Merits
Under AEDPA’s standard of review, Mr. Barkell is not entitled to relief on this claim. Mr. Barkell has identified no United States Supreme Court precedent at the time of the Wyoming court’s decision that clearly established his right to an evidentiary hearing.
Mr. Barkell argues that “[w]hen the state provides an appeal of right, the defendant has a right to an appellate record that is adequate to present his claims on appeal.” Aplt. Br. at 22. As authority for this proposition he cites Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956); Draper v. Washington, 372 U.S. 487, 83 S.Ct. 774, 9 L.Ed.2d 899 (1963); and Mayer v. Chicago, 404 U.S. 189, 92 S.Ct. 410, 30 L.Ed.2d 372 (1971). Griffin held that the Constitution requires states to provide trial transcripts to indigent defendants appealing their convictions. See 351 U.S. at 19, 76 S.Ct. 585. Draper held that a state cannot circumvent Griffin by allowing an indigent defendant a free transcript only if the trial judge decides that the defendant’s claims on appeal are not frivolous. See 372 U.S. at 499-500, 83 S.Ct. 774. And Mayer held that an indigent defendant is entitled to a free transcript for purposes of appeal even if he has been convicted only of a misdemeanor and fined rather than incarcerated. See 404 U.S. at 195-98, 92 S.Ct. 410. Thus, these cases all deal with an indigent defendant’s right to obtain for appeal a transcript of judicial proceedings that would be available to those who can afford to pay for one, not, as here, an attempt to add to the record of those proceedings by conducting supplemental proceedings. They do not provide clearly established precedent for Mr. Barkell’s argument.
*689 In addition, Mr. Barkell cites Cuyler v. Sullivan, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980); United States v. Cronic, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984); Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); and Evitts v. Lucey, 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985), for the proposition that he was entitled to the effective assistance of counsel on his appeal. From that proposition he argues that an evidentiary hearing was necessary for his appellate counsel to provide adequate representation. But none of the cited cases addresses denial of an evi-dentiary hearing in the course of an appeal. Cuyler held that a defendant with a privately retained lawyer, like a defendant with appointed counsel, may raise a Sixth Amendment claim of ineffective assistance. See 446 U.S. at 344-45, 100 S.Ct. 1708. Cronic held that most claims of ineffective assistance require proof of deficient performance and that only rarely do the surrounding circumstances justify a presumption of ineffectiveness. See 466 U.S. at 658-62, 104 S.Ct. 2039. Strickland addressed the “meaning of the constitutional requirement of effective assistance,” 466 U.S. at 686, 104 S.Ct. 2052, holding that to prove an ineffectiveness claim the defendant must show that counsel’s performance “fell below an objective standard of reasonableness,” id. at 688, 104 S.Ct. 2052, and that the deficiency prejudiced the defense, see id. at 687, 104 S.Ct. 2052. Ev-itts held that due process guarantees the effective assistance of counsel to a defendant pursuing a first appeal as of right. See 469 U.S. at 396, 105 S.Ct. 830. These cases simply do not consider the issue now before us. Attractive as Mr. Barkell’s legal contention may be, he has not shown that the Wyoming Supreme Court decision was “contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.” 28 U.S.C. § 2254(d)(1); see Penry v. Johnson, 532 U.S. 782, 795, 121 S.Ct. 1910, 150 L.Ed.2d 9 (2001) (state court’s decision was not unreasonable or contrary to federal law when there were “substantial” differences between the case before the state court and the Supreme Court case relied on by the defendant). Nevertheless, as we shall see in addressing Mr. Barkell’s allegations of pretrial ineffectiveness of counsel, the state court’s decision to refuse an evidentiary hearing can affect our review of his other claims.
B. Ineffective Assistance
A defendant making an ineffective-assistance-of-counsel claim must show both that counsel’s performance “fell below an objective standard of reasonableness” and that “the deficient performance prejudiced the defense.” Strickland, 466 U.S. at 687-88, 104 S.Ct. 2052. Review of counsel’s performance under the first prong of the Strickland test is highly deferential. “[Cjounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.” Id. at 690, 104 S.Ct. 2052. To be deficient, the performance must be “outside the wide range of professionally competent assistance.” Id. Counsel’s decisions are presumed to represent “sound trial strategy”; “[f]or counsel’s performance to be constitutionally ineffective, it must have been completely unreasonable, not merely wrong.” Boyd v. Ward, 179 F.3d 904, 914 (10th Cir.1999) (internal quotation marks omitted). As for the prejudice prong, the defendant must establish a reasonable probability that “but for counsel’s unprofessional errors, the result of the proceeding would have been different.” United States v. Stevens, 978 F.2d 565, 568 (10th Cir.1992) (internal quotation marks omitted). If the *690 defendant is unable to show either “deficient performance” or “sufficient prejudice,” the ineffectiveness claim will fail. Strickland, 466 U.S. at 700, 104 S.Ct. 2052.
Mr. Barkell raises a number of claims of ineffective assistance of his trial counsel. For purposes of analysis it is convenient to divide them into two groups. The first group we address will be those that rest on the record of the state trial court. The second group consists of claims for which Mr. Barkell relies, at least in part, on evidence outside that record. Because the claims in the first group all relate to conduct during trial, we will refer to them as “Trial Errors.” The remaining claims allege deficiencies in pretrial preparation and will be called “Pretrial Errors.”
1. Alleged Trial Errors
Mr. Barkell argues that Mr. McQueen failed to represent him adequately during trial and lacked “basic legal knowledge concerning trial practice, rules and standards.” Aplt. Br. at 25. Mr. Barkell first complains that Mr. McQueen did not question BV’s competency to testify, arguing that a hearing on the matter would have “reinforced to BV [the] seriousness of the testimony” and, if she had been found incompetent, would have “substantially weakened] the state’s case.” Id. at 34. He also suggests that such a hearing would have helped him prepare for trial. We are unpersuaded. Mr. Barkell does not cite any evidence that BV, who was 11 at the time of trial, was incompetent to testify. And as for the contention that a hearing on BV’s competency would have impressed her with the seriousness of her testimony or provided a useful practice run for cross-examining her at trial, Mr. Barkell provides no basis for his speculation that BV might have changed her testimony after such a hearing, nor does he explain how Mr. McQueen may have altered his cross-examination strategy as a result of the proposed hearing. More importantly, an attorney does not provide deficient representation by failing to pursue an unfounded motion, regardless of the possible tactical advantages that might result from doing so. Indeed, we would fault an attorney for intentionally abusing the judicial process in that manner. See Put-man v. Head, 268 F.3d 1223, 1246 (11th Cir.2001) (“Although an attorney has an ethical duty to advance the interest of her client, that duty is limited by an equally solemn duty to comply with the law and standards of professional conduct.” (internal quotation marks and brackets omitted)). Accordingly, we reject this claim.
Second, Mr. Barkell criticizes Mr. McQueen’s cross-examination of BV, stating that he “used words, complex questions, and lines of reasoning that confused not only BV, but also the court.” Aplt. Br. at 35. The Wyoming Supreme Court did not specifically address Mr. Barkell’s contention that Mr. McQueen’s cross-examination of BV was confusing, but rejected the general claim of ineffective cross-examination of BV on the ground that Mr. Barkell had “fail[ed] to elucidate any failings that fall below the standard of a reasonably competent attorney, especially any that were likely to have changed the outcome of the trial.” Barkell, 55 P.3d at 1244. The Wyoming Supreme Court was not unreasonably construing Strickland in determining that a few poorly framed sentences did not constitute ineffective representation. Applying AEDPA’s deferential standard of review, we reject this claim of ineffective assistance.
Mr. Barkell also complains that Mr. McQueen’s cross-examination of the state’s expert witness was deficient, particularly in inadvertently eliciting a statement from the expert that children in stepparent households are more likely to be abused *691 than other children. The Wyoming Supreme Court rejected this claim, deciding that Mr. McQueen’s cross-examination of the state’s expert was “relevant and useful to the theory which the defense was pursuing.” Id. at 1244. Under AEDPA deference, we affirm the denial of this claim. We note, however, that this claim is intimately tied to Mr. Barkell’s claim of ineffective pretrial preparation. We are not at this point disposing of the claim that deficient investigation of the case led Mr. McQueen (1) to ask questions that had prejudicial consequences and (2) to fail to ask questions that would have elicited helpful testimony.
Mr. Barkell next complains that Mr. McQueen did not do enough to undermine BV’s credibility. He argues that Mr. McQueen called only three witnesses to challenge her testimony (two babysitters and her mother’s aunt) and that he evoked only “minimally useful testimony” from them concerning BV’s tendency to lie. Aplt. Br. at 40. Mr. Barkell’s sole argument before the Wyoming Supreme Court regarding these witnesses was to complain of Mr. McQueen’s unsuccessful attempt to introduce testimony of specific instances of BV’s untruthfulness, and to surmise that had Mr. McQueen understood the Wyoming evidentiary rules, he would have been able “to come up with an alternative theory of relevance for certain instances of untruthfulness — such as demonstrating BV’s particular motives to lie about Mr. Barkell.” ApltApp. Vol. II at 390. The Wyoming Supreme Court rejected this argument, noting that Mr. McQueen was able to elicit testimony regarding BV’s reputation for untruthfulness, and that no prejudice had resulted from the alleged shortcomings. See Barkell, 55 P.3d at 1245. In his brief to us, Mr. Barkell does not explain what more the witnesses could have done to undermine BV’s testimony, except to suggest that testimony regarding specific falsehoods could have been admitted to show that “when BV thought she was in trouble, she simply lied and blamed someone else.” Aplt. Br. at 46. But because this suggestion was not made to support Mr. Barkell’s ineffectiveness claim in the Wyoming Supreme Court, the argument based on this suggestion is unexhausted, see 28 U.S.C. § 2254(b)(1)(A) (relief is not available under § 2254 unless “the applicant has exhausted the remedies available in the courts of the State”); Pi-card v. Connor, 404 U.S. 270, 275-76, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971) (“[T]he federal claim must be fairly presented to the state courts.... Only if the state courts have had the first opportunity to hear the claim sought to be vindicated in a federal habeas proceeding does it make sense to speak of the exhaustion of state remedies.”). And in any event, failure to make this creative evidentiary argument at trial would not be “outside the wide range of professionally competent assistance.” Strickland, 466 U.S. at 690, 104 S.Ct. 2052. The state court’s decision that the alleged errors in presenting these defense witnesses did not constitute ineffective assistance was not contrary to or an unreasonable application of federal law. See 28 U.S.C. § 2254(d).
Mr. Barkell further argues that Mr. McQueen’s closing argument was deficient because he “brought out a few inconsistencies in BV’s testimony, but failed to point out many of the most important ones.” Aplt. Br. at 41. Mr. Barkell specifically points to BV’s misstating by eight months the date that she and her family had moved in with Mr. Barkell. The Wyoming Supreme Court rejected this argument, stating that Mr. McQueen had identified some inconsistencies in BV’s testimony and that the “few additional inconsistencies identified by Barkell *692 ... are trivial at best and unrelated to the elements of the sexual abuse allegations. Counsel’s decision not to list for the jury every possible inconsistency in the testimony cannot be said to be ineffective assistance.” Barkell, 55 P.3d at 1244. We agree. Jurors pay attention. They are highly likely to observe the more significant inconsistencies in a witness’s testimony, and they may well be more persuaded of the importance of an inconsistency if they think that they have made the discovery on their own rather than on the importuning of an advocate. Cf. Cannon v. Mullin, 383 F.3d 1152, 1164 (10th Cir.2004) (“It is not ... always the best trial strategy to exploit every inconsistency in the statements of a witness, even a witness called by opposing counsel.”). The state court’s rejection of this claim was not contrary to or an unreasonable application of federal law. See 28 U.S.C. § 2254(d).
Mr. Barkell finally claims that Mr. McQueen’s representation was ineffective “because he lacked rudimentary knowledge of trial procedures and legal principles.” Aplt. Br. at 43. The Wyoming Supreme Court denied the various claims made by Mr. Barkell in this section of his brief because the alleged errors did not result in prejudice. See Barkell, 55 P.3d at 1244-45. We agree.
2. Alleged Pretrial Errors
Mr. Barkell makes two claims of ineffective assistance, related to Mr. McQueen’s preparation for trial: (1) failure to investigate and (2) failure to consult an expert witness. We address each in turn.
a. Failure to Investigate
Mr. Barkell claims that Mr. McQueen failed to investigate adequately BV’s school and counseling experiences, which would have led to evidence undermining her credibility. He asserts that he informed Mr. McQueen before trial that BV had been in counseling, but Mr. McQueen never attempted to speak with her counselors. He also asserts that he specifically requested that Mr. McQueen interview and call at trial BV’s school counselor and fourth-grade teacher, whose testimony would have impeached BV’s credibility, yet Mr. McQueen failed to do so. He states that Mr. McQueen should have known that counseling records would likely contain information regarding BV’s alleged tendency to lie, as well as information regarding “her feelings towards and possible motives against Mr. Barkell,” Aplt. Br. at 28, and that under these circumstances “a reasonable attorney would have realized that family and school counseling involving the alleged victim could' be a valuable resource in determining the alleged victim’s personality, propensity and motives to lie,” id. at 28-29. He contends that if Mr. McQueen had obtained this evidence, it “would have changed the outcome at trial.” Id. at 28.
The Wyoming Supreme Court rejected this claim on the ground that “a defendant does not meet his burden to show his counsel’s performance was deficient by mere speculation or equivocal inferences as to potential witnesses and testimony that could have been called at trial.” Bar-kell, 55 P.3d at 1243. The court faulted Mr. Barkell for making “the assumption that, because BV was in counseling, there may be evidence in her counseling records to support his defense theory that she was either dishonest or motivated to fabricate the allegations of sexual assault,” and added that “[bjecause Barkell does not identify any specific testimony or evidence that the counselors would have offered, the presumption that trial counsel rendered adequate-assistance and exercised reasonable *693 professional judgment is not rebutted.” Id.
But Mr. Barkell has identified such evidence for us. He has submitted a copy of his state-court motion for a limited remand, which included several attachments. A self-styled “affidavit” (unnotarized) from Mr. Barkell stated that he had discussed BV’s counseling history with Mr. McQueen and had asked him to interview Sue Maxt-ed, BV’s counselor, and Mrs. Hartman, BV’s fourth-grade teacher, but that Mr. McQueen had not tried to obtain information regarding the counseling or otherwise complied with his requests. Mr. Barkell also attached an affidavit from his sister, Lynn Allred, who had attended several pretrial meetings with Mr. McQueen, in which she asserted that “Mr. McQueen failed to talk to or investigate many of the possible witnesses that we had presented to him,” including Ms. Maxted and BV’s teachers. She stated that Mr. McQueen “failed to get many of the documents and reports of the victim’s past problems, including the reports from ... their family counselor and reports from the previous safe houses and foster homes which the victim was in.” ApltApp. Vol. I at 144.
In addition, copies of BV’s counseling records were attached to the motion. These records, which relate to counseling sessions when BV was in grades one through four, refer several times to BV’s tendency to lie. The records from first grade contain three references to her lying, and records from second, grade contain two such references.
In light of the support for Mr. Barkell’s deficient-investigation claim, we must ask whether we can consider this support and, if so, how that affects our standard of review of the decision by the Wyoming Supreme Court. The answer to these questions depends on whether (1) Mr. Bar-kell made adequate efforts to present evidence in state court and (2) the Wyoming court ruled on whether Mr. Barkell’s allegations, if true, would establish an ineffective-assistance claim.
Habeas applicants who have not received an evidentiary hearing in' state court may be entitled to an evidentiary hearing in federal court. AEDPA states: If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—
(A) the claim relies on—
(I) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.
28 U.S.C. § 2254(e)(2). “Under the opening clause of § 2254(e)(2), a failure to develop the factual basis of a claim is not established unless there is a lack of diligence, or some greater fault, attributable to the prisoner or the prisoner’s counsel.” Williams v. Taylor, 529 U.S. 420, 432, 120 S.Ct. 1479, 146 L.Ed.2d 435 (2000). “If the prisoner did not fail to develop the factual basis for his claim in State court, § '2254(e)(2) is not applicable and a federal habeas court should proceed to analyze whether an evidentiary hearing is appropriate or required under pre-AEDPA standards.” Cannon v. Mullin, 383 F.3d 1152, 1176 (10th Cir.2004) (internal brackets and quotation marks omitted). Thus, the *694 threshold issue is whether Mr. Barkell exercised sufficient diligence in state court to avoid the strictures of § 2254(e)(2). We believe that he did.
Our conclusion is based on our reading of Wyoming law before Mr. Barkell’s appeal. In most jurisdictions claims of ineffective assistance are brought in postconviction collateral proceedings. See Massaro v. United States, 538 U.S. 500, 504, 508, 123 S.Ct. 1690, 155 L.Ed.2d 714 (2003) (agreeing with most federal circuits and a “growing majority of state courts” that ineffectiveness claims need not be raised on direct appeal and that “in most cases [postconviction collateral proceedings are] preferable to direct appeal for deciding claims of ineffective assistance.”). Evidence of ineffectiveness can be gathered after trial, or even after exhaustion of direct appeals, and presented to the court for consideration. Wyoming law, however, allows criminal defendants to raise ineffectiveness claims only on direct appeal. See Calene v. State, 846 P.2d 679, 683 (Wyo.1993). To supplement the trial record with evidence of ineffectiveness, the defendant must move the state supreme court (the state’s sole appellate court) for a limited remand. See id. at 692.
As previously described, Mr. Barkell submitted such a motion, accompanied by several supporting attachments. The Wyoming Supreme Court denied the motion for limited remand without explanation. In its decision on the merits, however, the court explained as follows its rejection of his claim that he was improperly denied a remand:
[Mr.] Barkell claims that he was entitled to remand for an evidentiary hearing on his claims of ineffective assistance of counsel, citing Calene v. State, 846 P.2d 679 (Wyo.1993). The present case, however, is more similar to Griswold v. State, 994 P.2d 920, 930-31 (Wyo.1999). Appellant cannot rely on mere allegations and speculation for the purpose of obtaining a remand to develop a record on his claims of ineffective assistance. We previously denied Barkell’s Motion for a Partial Remand and, in his appellate brief, he provides no additional facts or argument justifying a remand.
Barkell, 55 P.3d at 1245-46.
If the state court’s denial of an evi-dentiary hearing was the consequence of Mr. Barkell’s “failure” to comply with established requirements of state law, then under AEDPA he is not entitled to such a hearing in federal court and we grant deference under § 2254 to the state court’s decision on the merits. See 28 U.S.C. § 2254(d) (deferring to state court’s rulings of law); see also § 2254(e)(1) (“[A] determination of a factual issue made by a State court shall be presumed to be correct.”). Not complying with established requirements would ordinarily constitute the fault necessary to impose the strict limitations of § 2254(e)(2) on the opportunity for a federal evidentiary hearing.
But if Mr. Barkell complied with what reasonably appeared to be the established state-law requirements, he cannot be said to have “failed to develop the factual basis of [his] claim,” id. § 2254(e)(2), even if his reasonable interpretation of state law turned out to be wrong, see Williams, 529 U.S. at 432, 120 S.Ct. 1479 (such a failure “is not established unless there is a lack of diligence, or some greater fault”); cf. Osborn v. Shillinger, 861 F.2d 612, 618 (10th Cir.1988) (“[I]f a petitioner could not reasonably have been aware that a procedural rule would prevent the court from addressing the merits of his claim, his violation of that rule cannot bar federal review.”). In our view, Mr. Barkell’s efforts complied with a reasonable (although apparently incorrect) *695 interpretation of the mandates of Wyoming law as it stood before his appeal. We do not question the Wyoming Supreme Court’s construction of Wyoming law. As the dissent states, that court has the last word on whether Mr. Barkell’s request for an evidentiary hearing satisfied the requirements of Wyoming law at the time of its ruling on that request. But whether Mr. Barkell, for purposes of § 2254(e)(2), was at fault in not obtaining an evidentiary hearing depends not on how Wyoming law was construed in his own appeal but, rather, on what the law reasonably appeared to be at the time he filed his request for an evidentiary hearing. In other words, it is clear (because the Wyoming Supreme Court said so) that his request for an evidentiary hearing was inadequate, but whether this inadequacy triggers denial of a federal evidentiary hearing under § 2254(e)(2) depends on whether he was negligent (or worse) in submitting an inadequate request. On this point we do not defer to the Wyoming courts. Indeed, a state court would have no occasion to determine whether the defendant has satisfied the § 2254(e)(2) requirements for a federal evidentiary hearing, so we have no state adjudication on the matter to which we could defer.
Turning, then, to the content of Wyoming law when Mr. Barkell moved for an evidentiary hearing, the requirements for obtaining a remand had been set forth in the Wyoming Supreme Court decision in Calene. That decision held that a defendant seeking an evidentiary hearing to develop a factual record must submit a motion for remand that is “appropriately supported by contentions defining and supporting any ineffectiveness claim in detail and supported, as may be appropriate, by affidavit sufficient to establish substan-tiality.” Calene, 846 P.2d at 692; see id. at 687 (“[I]t is necessary for serious and specific allegations of ineffectiveness to be sufficiently stated and documented to show a real issue before the trial court can be put to the additional requirement of providing an evidentiary hearing.”). The Wyoming Supreme Court remanded for an evidentiary hearing in that case. Id. at 694. The remand was predicated solely on “the letter of complaint by appellant addressed to the trial court.” Id. at 684. The appellant had been convicted of charges relating to theft of an automobile. Id. at 681. He admitted painting the vehicle but denied knowing that it was stolen, saying that he was simply hired to do the painting. Id. at 682. His letter asserted that he had informed his attorney of witnesses who could testify to his lack of knowledge and other exculpatory matters. Id. The court concluded:
We do not assume or determine that valuable witnesses did exist or that a failure of investigation and preparation adversely denied valuable testimony to the defendant. We find the contentions sufficiently substantial in the record now presented that a hearing should be held. At the hearing, defense counsel can testify and Calene can provide additional evidence for any substantiation regarding the usefulness of non-called witnesses as evidence upon which the trial court’s decision may be rendered regarding the standard of counsel performance.
Id. at 693. Contrary to the dissent, we see nothing in the Calene opinion to suggest that the Wyoming Supreme Court was giving Calene “a break,” Dissent at 703, and holding him to less stringent requirements than would be imposed on later appellants seeking an evidentiary hearing.
Mr. Barkell could reasonably have believed that his request for an evidentiary hearing met the Calene standard by making specific allegations of his counsel’s pretrial failures to follow substantial leads *696 from his client and resulting prejudice. Mr. Barkell’s allegations may have been unsworn, but Mr. Calene’s clearly were. Uncertain why the Wyoming Supreme Court denied him an evidentiary hearing, we believe that Mr. Barkell did not exhibit the fault required by Williams, 529 U.S. at 432, 120 S.Ct. 1479, to bring him under § 2254(e)(2) for not obtaining an evidentia-ry hearing in state court. It is useful to contrast this case with two in which the defendant’s showing was held inadequate. First, Calene, 846 P.2d at 687, cites Leach v. State, 836 P.2d 336 (Wyo.1992), as providing an example of a showing that did not support remand for a hearing. In that case the support for a hearing in the motion for remand consisted only of the following:
2. It is Appellant’s contention that his counsel at trial was ineffective, and he desires that the issue of ineffectiveness of counsel be raised on this appeal.
3. That there is no record of objection to ineffective assistance at the trial court level, nor does the present record contain facts necessary to develop appellant’s claim.
Leach, 836 P.2d at 341. Mr. Barkell’s showing is far stronger. Second, on Mr. Barkell’s appeal the Wyoming court stated that his case was more similar to Griswold v. State, 994 P.2d 920, 930-31 (Wyo.1999), than to Calene. See Barkell, 55 P.3d at 1245-46. But in Griswold the Wyoming Supreme Court’s only discussion regarding the request for an evidentiary hearing was the following:
Relying on Calene v. State, 846 P.2d 679 (Wyo.1993), Griswold argues only that “appellate counsel is filing a Motion for Partial Remand and Affidavit in Support Thereof for the purpose of having the matter remanded to the District Court for the taking of evidence on this issue.” We denied his Motion for Partial Remand, finding that Griswold failed to provide a substantial factual basis for his claim. Moreover, in his appellate brief, Griswold provides no facts or arguments in support of this assertion. We have consistently held that we will not consider claims unsupported by cogent argument and authority. Madrid v. State, 910 P.2d 1340, 1347 (Wyo.1996).
994 P.2d at 930-31. This discussion would have given Mr. Barkell no guidance regarding what was missing from his pleadings that would be necessary to entitle him to an evidentiary hearing under Wyoming law. Accordingly, we hold that Mr. Bar-kell was not at fault in failing to obtain an evidentiary hearing in state court, and § 2254(e)(2) does not apply.
We must now decide whether Mr. Bar-kell is entitled to an evidentiary hearing under the pre-AEDPA standard, which provides that the habeas applicant is entitled to an evidentiary hearing in federal district court “if (1) the facts were not adequately developed in the state court, so long as that failure was not attributable to the petitioner, ... and (2) his allegations, if true and not contravened by the existing factual record, would entitle him to habeas relief.” Cannon, 383 F.3d at 1175 (internal brackets, quotation marks, and citations omitted). With respect to the first requirement, we have already decided that the lack of a state-court evidentiary hearing should not be attributed to Mr. Bar-kell. He proceeded in a manner that was reasonable under Wyoming precedent. Hence, Mr. Barkell is entitled to an evi-dentiary hearing in federal district court if his allegations, if true, would entitle him to habeas relief. See Cannon, 383 F.3d at 1175.
Before providing our view on the matter, we must first consider whether the Wyoming Supreme Court has already ad *697 dressed that issue. The dissent suggests that the Wyoming court rejected Mr. Bar-kell’s motion for remand on the ground that an evidentiary hearing would be futile because his ineffectiveness claim would fail even if he were able to prove the allegations in his motion. If that had been the basis for the court’s rejection, AEDPA would require us to defer to the court’s determination of the underlying federal constitutional law — namely, the determination that Mr. Barkell’s allegations did not state a claim of ineffective assistance of counsel. See Hammon v. Ward, 466 F.3d 919, 928 (10th Cir.2006). That is, if the Wyoming court reasonably construed federal law to be that the allegations in Mr. Barkell’s remand motion failed to state a claim of ineffectiveness of counsel, we would need to accept that ruling and deny Mr. Barkell an evidentiary hearing in federal court, because the hearing could not benefit him on the merits. See id.
In our view, however, that was not the basis for the Wyoming Supreme Court’s rejection of the motion to remand. First, that court’s decision does not say that it is rejecting remand because it would be futile; it says that a hearing cannot be justified by “mere allegations and speculation.” Barkell, 55 P.3d at 1246. The implication is that affidavits are required.
More importantly, the Wyoming court’s discussion of the merits of Mr. Barkell’s ineffectiveness claim (based on the record, without reference to the allegations and evidence in his motion for remand) suggests that its analysis would need to be revised if it were to assume the truth of the allegations in the remand motion, yet the court never hinted that it was undertaking such a revised analysis. When the court rejected on the merits Mr. Barkell’s claim of ineffective assistance of counsel in trial preparation, it noted that “[h]e makes the assumption that, because BV was in counseling, there may be evidence in the counseling records to support his defense theory that she was either dishonest or motivated to fabricate the allegation of sexual assault,” id. at 1243, and then went on to say that the presumption of effective assistance had not been rebutted “[b]e-cause Barkell does not identify any specific testimony or evidence that the counsellors would have offered,” id. These statements were made without consideration of the materials contained in Mr. Barkell’s motion for remand (including copies of counseling records repeatedly stating that BV had lied), because the motion had been denied. They suggest, though, that a different result — or at least further consideration and analysis — would be required to dispose of the merits if Mr. Barkell had in fact identified “specific ... evidence” in the counseling records showing that BV “was ... dishonest.” Id. Consequently, the Wyoming court could not conclude that the allegations in Mr. Barkell’s motion for remand failed to state a claim of ineffective assistance unless the ' court were to go beyond its earlier analysis and determine that counseling records reporting BV’s dishonesty would not support the ineffectiveness claim. That the Barkell opinion contained no such analysis strongly implies that its rejection of the motion to remand was based on the form, rather than the substance, of the allegations in the motion.
We therefore conclude that the Wyoming Supreme Court has not decided whether Mr. Barkell’s allegations would entitle him to relief if he proved them. In denying Mr. Barkell’s ineffectiveness claim, the Wyoming court was deciding a different issue from what is before us. Accordingly, we have no Wyoming decision to defer to when we consider the sufficiency of Mr. Barkell’s allegations of ineffective pretrial preparation. Our situation is similar to that of a federal court considering a habeas claim after a federal-court *698 evidentiary hearing provides material facts not considered by the state court. See Bryan v. Mullin, 335 F.3d 1207, 1215-16 & n. 7 (10th Cir.2003) (en banc) (declining to apply § 2254(d)’s deferential standard of review when the state court had denied an evidentiary hearing on ineffectiveness claims and federal district court had conducted one); Mayes v. Gibson, 210 F.3d 1284, 1289 (10th Cir.2000) (reviewing additional evidence proffered by habeas applicant without deference to the state court’s factual findings when state court denied an evidentiary hearing).
Conducting our independent analysis of Mr. Barkell’s allegations, we believe that he has adequately alleged deficient pretrial investigation. “The duty to investigate derives from counsel’s basic function ... to make the adversarial testing process work in the particular case.” Williamson v. Ward, 110 F.3d 1508, 1514 (10th Cir.1997) (internal quotation marks omitted). “[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.” Id. (internal quotation marks omitted). In light of the prosecution’s complete reliance on the victim’s veracity and the leads given by Mr. Barkell and his sister, it would have been unreasonable for Mr. McQueen not to investigate whether records and witnesses regarding BV’s counseling and school experiences could suggest her propensity to lie or her motive to harm Mr. Barkell. See Rompilla v. Beard, 545 U.S. 374, 125 S.Ct. 2456, 2460, 2467, 162 L.Ed.2d 360 (2005) (it was unreasonable for counsel not to read case file he knew the prosecution would rely on at sentencing, even though the defendant and his family had suggested that no mitigating evidence existed). The content of the records- submitted by Mr. Barkell with his motion for limited remand indicates that the results of any such investigation would have been helpful to the defense. We therefore conclude that Mr. Barkell is entitled to an evidentiary hearing in federal district court, at which the court can ascertain whether Mr. Barkell is able to prove the necessary deficiencies and prejudice.
b. Failure to Consult Expert
Mr. Barkell also complains about Mr. McQueen’s failure to consult with or call at trial an expert witness on child psychiatry. He argues that this failure was unreasonable because Mr. McQueen had the resources to call an expert witness, it is common for the prosecution to call an expert witness in child-sex-abuse cases, and a reasonable defense attorney would use an expert to prepare. He claims that his defense was prejudiced by this failure because (1) consultation with an expert would have aided Mr. McQueen’s cross-examination of the state’s expert and BV, and (2) a defense expert “could have explained to the jury how children’s testimony should be evaluated, as well as shed light on problems with the testimony of the state’s expert.” Aplt. Br. at 32.
An affidavit from Ms. Lozano, the public defender originally assigned to Mr. Bar-kell’s case, submitted with the state-court motion for a limited remand supports his claim that it was unreasonable for Mr. McQueen not to consult an expert. The affidavit states, “[I]t is standard practice to enlist the use of an expert in child sex abuse cases, whether to help prepare for cross examination or to testify as a defense witness.” ApltApp. at 138-39.
As for a showing of prejudice, although the independent-expert report submitted by Mr. Barkell with the remand motion lists 14 factors that support BV’s credibility, it also lists five factors that question her credibility. In addition, the report *699 states that the “expert could have ... informed the jury about the body of knowledge and research on children’s false allegations of sexual abuse.” Id. at 216. On the other hand, the report "also stated: “I do not disagree with anything the state’s expert said.” Id.
This last statement convinces us that it was not ineffective assistance to fail to call the expert as a witness. Ultimately, her testimony would simply have corroborated that of the government’s expert, and would have had the added prejudicial impact of emanating from the defense.
But consultation to assist in cross-examination is another matter. The report suggests that Mr. McQueen could have scored some points on cross-examination of the prosecution’s expert. And, more importantly, prior consultation would likely have prevented him from asking whether children in stepparent families are more likely to be abused than other children, a question that elicited a damaging affirmative answer. Although we are uncertain whether this prejudice would itself be sufficient to sustain Mr. Barkell’s ineffectiveness claim, the prejudice resulting from this lapse may well have added to any prejudice resulting from Mr. McQueen’s failure to investigate BV’s school and counseling experience. Mr. Barkell is thus entitled to include this matter in the evidentiary hearing in federal district court. After the hearing the court will be equipped to decide whether the failure to consult an expert was constitutionally ineffective in itself or in combination with the alleged failure to investigate.
III. CONCLUSION
We AFFIRM the district court’s denial of relief on Mr. Barkell’s failure-to-remand claim and on those of Mr. Barkell’s ineffectiveness claims related to his attorney’s performance at trial. We REVERSE the denial of Mr. Barkell’s other ineffectiveness claims, and REMAND to the district court to hold an evidentiary hearing.